IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

| | | |
|---|---|---|
| REGGIE LOVE, SCOTT GARNER, AND OWN LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| JUSTIN JACKSON AND ANGEL AGARRAT, | ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

## PLAINTIFFS' COMPLAINT

Plaintiffs Reggie Love ("Love"), Scott Garner ("Garner"), and OWN LLC ("OWN") (collectively "Plaintiffs") file this Complaint against Defendants Justin Jackson ("Jackson") and Angel Agarrat ("Agarrat") (collectively "Defendants") as follows:

### INTRODUCTION AND SUMMARY OF CLAIMS

1.      Plaintiffs ask the Court to enjoin the misappropriation of their names and infringement and dilution of OWN's trademarks by Defendants, who have perpetrated various schemes in which Jackson pretends to be connected to OWN, its employees, and others in an effort to obtain financial benefits.  Agarrat aids and abets Jackson's actions and has conspired with him to accomplish his unlawful purpose.

2.      Jackson has been convicted of felony theft for posing as Madonna's manager and stealing jewelry worth $2.4 million.  He has been criminally charged with impersonating a public officer/employee and financial identity fraud for acts committed against Love when Love was a

public official.  There is a warrant for Jackson's arrest after he failed to appear for trial on these charges.

3.      For the past two years, Jackson has posed as various individuals associated with the Oprah Winfrey Network, such as Scott Garner (an employee of OWN) and Reggie Love (who is not), in an effort to obtain things of value, including employment and gifts.  Jackson has attempted to gain for himself and Agarrat employment with a national hotel chain by claiming to be the nephew of Oprah Winfrey ("Ms. Winfrey") and Ms. Winfrey's former executive assistant at OWN.  Jackson attempted to obtain these jobs by falsely offering to have Ms. Winfrey make an appearance at one of the hotel chain's hotels as part of her program at the American Airlines Arena in Miami on October 24-25, 2014.   Agarrat has directly participated in the misappropriation of Plaintiffs' names for the financial benefit of Agarrat.  Agarrat and Jackson have infringed and diluted OWN's trademarks and trade name.

4.      Plaintiffs seek a judicial declaration that Defendants have committed misappropriation of name, trademark infringement, trademark dilution, and trade name infringement/dilution, and that they be restrained from committing their fraudulent acts in the future.

## PARTIES

5.      Plaintiff OWN is a limited liability company organized under the laws of the State of Delaware with its principal place of business in California.

6.      Plaintiff Love is a natural person and citizen of the Commonwealth of Virginia.  Mr. Love is a former public official.

7.      Plaintiff Garner is a natural person and a citizen of the State of California.

8.     Defendant Jackson is a natural person and a citizen of the State of Florida. Jackson may be served at his home address at 2728 N. 24th Avenue, Hollywood, Florida 33020.

9.     Defendant Angel Agarrat is a natural person and a citizen of the State of Florida. Agarrat may be served at her home address at 4410 Northwest 24th Street, Lauderhill, Florida 33313.

10.    Jackson and Agarrat are shown together below at a fashion show in Miami:



Angel Agarrat and Justin Jackson at the Cubavera fashion show at The Adrienne Arsht Center for the Performing Arts.

## JURISDICTION AND VENUE

11.    This Court has personal jurisdiction over Jackson and Agarrat, who both reside in the State of Florida.

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This Court also has subject matter jurisdiction over Plaintiffs' claims arising under federal law pursuant to

-3-

15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.  This Court also has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a) because they are so related to the claims as to which the Court has original jurisdiction that they form part of the same case or controversy.

13.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in Broward or Dade Counties, Florida.  Additionally, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because this is a district in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL BACKGROUND

A.     **Plaintiffs.**

14.     Love is a former college basketball player and public official.  As such, Love garnered a degree of notoriety.  Mr. Love has never been affiliated with OWN.  Garner is the Executive Vice President of Scheduling and Acquisitions for OWN.

15.     OWN is a media company associated with the Oprah Winfrey Network, a popular television network launched in 2011.  OWN is the owner of United States Trademark Registration No. 4,242,614, registered November 13, 2012 and amended May 21, 2013, for the service mark



(for "entertainment services, namely, multimedia programs in the field of general human interest, distributed via various platforms across multiple forms of transmission media; providing entertainment information regarding ongoing television programs via a global computer network; production of television programs; production of multimedia programs", in Class 41).  OWN is

-4-

also the owner of United States Trademark Registration No. 3,949,131, registered April 19, 2011, for the word mark OWN (for "broadcast services, namely, transmission of audio-visual programming and content via television, satellite, wireless, fiber optics, cable, radio and a global computer network", in Class 38; and "entertainment and educational services in the nature of multimedia program series featuring subjects of general human interest distributed via various platforms across multiple forms of transmission media; providing entertainment information to others via a global computer network", in Class 41). These two marks are collectively referred to herein as the "OWN® marks" or "OWN® trademarks." True and correct copies of the federal registration certificates for the OWN® marks are attached hereto as Exhibits 1 and 2. These registrations are now valid, subsisting, uncancelled and unrevoked. The OWN® marks are widely recognized by the general consuming public of the United States as designations of the source of the services of OWN, which stands for "Oprah Winfrey Network." OWN's trademark rights in and to the OWN® marks are protected through common law rights and the federal registrations. OWN has the exclusive right to use the OWN® trademarks.

**B.      The Genesis of the Schemes.**

16.     On or about July 11, 2007, Jackson contacted Chopard Boutique in New York asking that it loan jewelry for a "photo shoot" of Madonna. As with many of his subsequent schemes, Jackson impersonated another individual, this time posing as Madonna's manager. Jackson convinced Chopard Boutique to loan the jewelry, valued at $2.4 million, but there was no photo shoot. Instead, Jackson fled with the merchandise and sold it to another jeweler. Jackson was convicted of the first degree felony of Grand Theft under Florida law. Although convicted, Jackson would later continue to perpetrate variations of this criminal fraud.

12351132v.11

C.     **Jackson's Scheme to Obtain Goods Using Love's Name While Love Was a Public Official.**

17.     On or about May 7, 2010, Jackson began impersonating Love in the Atlanta, Georgia area.  During that period, Love was a public official.  Jackson called the assistant of the Vice President for the Cheesecake Factory Restaurant and falsely stated that he was Love. Jackson sought gift cards for another public official.  Jackson was interviewed by agents from the U.S. Secret Service (Atlanta Field Office) and confessed via written statement to his attempts to obtain the gift cards while impersonating Love.  Jackson had promised (as written in his statement) to cease trying to pose as Love and engaging in fraudulent activities.  But Jackson reneged on his promise.

18.     On or about September 2, 2010, Love was again the subject of another attempt by Jackson to misappropriate Love's name.  This time, Jackson sent an email to Juicy Couture, a designer of clothing and handbags.  Jackson again purported to be Love and asked for items for a public official's daughters.

19.     Although Jackson was arrested for Impersonating a Public Officer and Financial Identity Fraud, he posted – and skipped – bail and there is currently a warrant out for his arrest in Georgia.  Jackson has tried to evade his criminal past by changing his name.  Specifically, Jackson filed a petition in the Circuit Court of Broward County, Florida – Civil Division to change his name to ViJay Gaultier-Lii.  However, no order granting the requested name change was entered; the case was dismissed for want of prosecution.

D.     **Jackson's Real Estate Scheme Using the Names of OWN and Garner.**

20.     In or about July 2013, Jackson called Jill Eber, a realtor with Coldwell Banker in Miami, Florida.  Jackson falsely identified himself as Garner from OWN.  Jackson claimed that he would be in Miami to look at properties for Ms. Winfrey and wished to use Ms. Eber's

services to view the properties. Jackson's statements were false. Neither OWN nor Garner consented to the use of their names nor were they in the market for properties.

21. Jackson used the names of Garner and OWN to establish a meeting with Ms. Eber to defraud the property owners or Ms. Eber for the financial benefit of Jackson. In the process, Garner and OWN were harmed as a result of Jackson's misappropriation of their names.

**E.   Jackson's Scheme to Obtain Employment with Perry Ellis International.**

22. On or about September 22, 2013, Jackson sent a letter to Perry Ellis International ("Perry Ellis") on what appeared to be OWN letterhead and purporting to be from Ms. Winfrey. Jackson sent the letter in connection with his attempt to gain employment with Perry Ellis. The letter contained the OWN® marks.

23. OWN did not consent to the use of its name or the OWN® trademarks in Jackson's forged letter. In sending the letter, Jackson misappropriated OWN's name for the financial benefit of Jackson. Jackson also infringed and diluted the OWN® trademarks. Jackson intended to deceive and mislead a member of the public in attempting to encroach upon the business of OWN. Jackson has never worked for OWN or Ms. Winfrey. OWN has been harmed by Jackson's misappropriation of its name and infringement and dilution of the OWN® trademarks.

**F.   Jackson's Scheme to Obtain Employment with the Atlantic Hotel.**

24. On or about December 4, 2013, Jackson sent a letter to Atlantic Hotel and Spa in Fort Lauderdale, Florida ("Atlantic Hotel") on what appeared to be OWN letterhead and purporting to be from Ms. Winfrey, dated December 3, 2013. Jackson sent the letter in connection with his attempt to gain employment with the Atlantic Hotel. The letter contained the OWN® marks.

12351132v.11

25.    OWN did not consent to the use of its name or the OWN® trademarks in Jackson's forged letter to the Atlantic Hotel.  In sending the letter, Jackson misappropriated OWN's name for the financial benefit of Jackson.  Jackson also infringed and diluted the OWN® trademarks.  Jackson intended to deceive and mislead a member of the public in attempting to encroach upon the business of OWN.  Jackson has never worked for OWN or Ms. Winfrey. OWN has been harmed by Jackson's misappropriation of its name and the infringement and dilution of the OWN® trademarks.

**G.    Jackson's Scheme to Obtain Gifts Using OWN's Name.**

26.    On or about December 6, 2013, Jackson sent an email and letter to Karla Otto, an international public relations and brand strategy agency.  The email and letter, which purported to be from Ms. Winfrey, solicited gifts for the "'Next Chapter' Holiday Special," a television program to be broadcast on the OWN network.  On information and belief, the letter incorporated OWN's name and the OWN® marks.

27.    On or about December 10, 2013, Jackson sent an email and letter to Carters, which sells clothing.  The email and letter, which purported to be from Ms. Winfrey, solicited gifts for the "'Next Chapter' Holiday Special."  The letter incorporated OWN's name and the OWN® marks.

28.    Also on or about December 10, 2013, Jackson sent a letter to Converse.  The letter, which purported to be from Ms. Winfrey, solicited gifts for the "'Next Chapter' Holiday Special."  On information and belief, the letter incorporated OWN's name and the OWN® marks.

12351132v.11

29.     On or about April 14, 2014, Jackson sent an email purporting to be from Ms. Winfrey and/or OWN to David Yurman to solicit jewelry.  The email also made reference to Love.

30.     On or about April 22, 2014, Jackson sent an email purporting to be from Ms. Winfrey and/or OWN to Pandora to solicit jewelry.  The email also made reference to Love.

31.     On or about April 25, 2014, Jackson sent an email, text messages, and made a telephone call, purporting to be from Ms. Winfrey and/or OWN, to Tacori to solicit jewelry. During the course of these communications, reference was also made to Love.

32.     On or about April 27, 2014, Jackson sent an email, text messages, and made a telephone call, purporting to be an executive from O Magazine, to Tory Burch, in which Jackson solicited purses on behalf of Ms. Winfrey and/or OWN.

33.     On or about April 28, 2014, Jackson sent an email, text messages, and made a telephone call, purporting to be an executive from O Magazine, to Tacori, in which Jackson solicited jewelry on behalf of Ms. Winfrey and/or OWN.

34.     OWN did not consent to the use of its name or the OWN® trademarks in Jackson's forged communications to Karla Otto, Carters, Converse, David Yurman, Pandora, Tacori, or Tory Burch.  Love did not consent to the use of his name in connection with the communications discussed above.  In sending these communications, Jackson misappropriated OWN's and Love's names for the financial benefit of Jackson.  Jackson also infringed and diluted the OWN® trademarks.  Jackson intended to deceive and mislead a member of the public in attempting to encroach upon the business of OWN.  OWN and Love have been harmed by Jackson's misappropriation of their names.  OWN has further been harmed by the infringement and dilution of the OWN® trademarks.

12351132v.11

**H.      Defendants' Scheme to Obtain Employment with the Fontainebleau Hotel.**

35.      On or about May 26, 2014, Jackson sent a letter of recommendation to the Fontainebleau Hotel in Miami, Florida in support of his application for employment at the hotel. The letter purported to be signed by Ms. Winfrey and contained statements about Jackson's character, education, and work ethic.   On information and belief, the letter incorporated the OWN® marks.

36.      On or about June 10, 2014,  Jackson and Agarrat appeared at the Fontainebleau Hotel for the job interview and presented reference letters on OWN letterhead purportedly written by Ms. Winfrey.  On information and belief, the letters incorporated the OWN® marks. Before being hired, the fraud was uncovered.

37.      Agarrat and Jackson jointly caused the name of OWN to be misappropriated for the financial benefit of Agarrat and Jackson.  Agarrat and Jackson also infringed and diluted the OWN® trademarks.   Both Jackson and Agarrat committed these acts without the consent of OWN.   Both Jackson and Agarrat intended to deceive and mislead a member of the public in attempting to encroach upon the business of OWN.  Jackson and Agarrat have never worked for OWN or Ms. Winfrey.  OWN has been harmed by Defendants' misappropriation of its name and the infringement and dilution of the OWN® trademarks.

**I.      Defendants' Scheme to Obtain Employment with Extended Stay America Hotel.**

38.      On or about September 9, 2014, Jackson sent an email to Kevin Henry, the Executive Vice President and Chief HR Officer of Extended Stay America Hotel ("Extended Stay").  In Jackson's email, Jackson purported to be Love writing on behalf of Ms. Winfrey and included a signature block suggesting that Love was the author of the email and the "Executive Assistant & Personal Aide" to Ms. Winfrey.   The email falsely identified Jackson as Ms.

Winfrey's "nephew" and asked that Jackson and Agarrat be given employment as soon as possible.

39.     Jackson's September 9, 2014 email attached a letter purporting to be from Ms. Winfrey, in which Ms. Winfrey allegedly endorsed Jackson.  The letter incorporated the OWN® marks and "Oprah Winfrey Network."  The letter's signature block included "Oprah Winfrey Network" and "Reggie Love, Special Assistant & Personal Aide" next to a forged signature of "Oprah Winfrey."  The forged letter included numerous falsehoods, including that Jackson reported to Ms. Winfrey for "33 months" while at OWN, and statements about the quality of Jackson's performance at OWN.

40.     The September 9, 2014 email also attached resumes for both Jackson and Agarrat. The resumes falsely claimed that Jackson and Agarrat worked for the "Oprah Winfrey Network." Jackson's resume falsely claimed that he was an "assistant" for OWN in Los Angeles, while Agarrat's resume falsely claimed that she was an "intern assistant" for OWN in Sunrise, Florida. Under the OWN entries of both resumes, the names "Reggie Love, Executive Assistant" and "Oprah Winfrey, CEO" were included.

41.     On or about September 9, 2014, Henry responded to Jackson's email by confirming receipt.  Henry's response also sought clarification that Agarrat and Jackson would like to work in the Ft. Lauderdale area, and asked whether they would be alright with entry level guest service/front desk work.

42.     On or about September 15, 2014, Jackson responded to Henry in an email that, again, falsely purported to be from Love.[1]  Jackson's email stated that both Agarrat and Jackson would like to work in the Ft. Lauderdale area.  Jackson's email also stated that "Oprah informed

---

[1] Although Jackson purported to be Love in both emails, the September 9, 2014 email address for the sender was listed as "Oprah Winfrey [mailto:Oprah.Winfrey@umpire.com]", whereas the September 15, 2014 email address for the sender was listed as "Reggie.love@execs.com [mailto:Reggie.love@execs.com]."

me that entry level front desk should not be a problem." Thereafter, on September 18, 2014, Henry asked Jackson for contact information for Jackson and Agarrat. Henry also provided a website address for specifics on Extended Stay's locations.

43.     On September 19, 2014, Jackson sent an email to Henry, again purporting to be from Love. In this email, Jackson informed Henry that both Agarrat and Jackson had applied to certain positions with Extended Stay.

44.     On or about September 29, 2014, Jackson sent another email to Henry, again purporting to be from Love. Jackson again informed Henry that both Agarrat and Jackson had applied for employment with Extended Stay. As an enticement to obtain employment for Agarrat and Jackson, the email stated: "Oprah ask [sic] that I inform you that she will be in Miami at the American Airline [sic] Arena October 24 and 25 for the Life You Want Weekend. She will love to visit both Justin and Angel at the hotel if employed at the time as part of her show."

45.     On information and belief, Jackson transmitted the foregoing emails, including the September 9, 2014 false email with attached false resumes and forged letter that misappropriated OWN's and Love's names and incorporated the OWN® marks; however, Agarrat had full knowledge of each instance of the unauthorized use of the names of OWN and Love and use of the OWN® marks to endorse Agarrat and Jackson for employment. Agarrat and Jackson jointly caused the names of OWN and Love to be misappropriated, and the OWN® marks to be infringed and diluted, for the financial benefit of Agarrat and Jackson. Both Jackson and Agarrat committed these acts without the consent of either OWN or Love. Both Jackson and Agarrat intended to deceive and mislead a member of the public in attempting to encroach upon the business of OWN and Love.

-12-

12351132v.11

46.     Neither Jackson nor Agarrat have ever worked for OWN in any capacity. Love has never worked with either Jackson or Agarrat in any setting, employment or otherwise. Neither OWN nor Love authorized the use of their names. The reputations and goodwill of OWN and Love have been harmed by Defendants' misappropriation of their names. OWN has further been harmed by Defendants' infringement and dilution of the OWN® trademarks.

**J.     Defendants' Scheme to Obtain Tickets to Oprah Winfrey's Show in Miami.**

47.     Defendants also conspired to fabricate a story in an effort to obtain tickets to a performance by Oprah Winfrey at the American Airlines Arena in Miami.

48.     On or about Thursday, October 23, 2014, Jackson contacted OWN via telephone and purported to be the manager for actor Johnny Depp ("Mr. Depp"). Jackson – impersonating Mr. Depp's manager – claimed that Mr. Depp would be in Florida and wanted four tickets to Ms. Winfrey's performance on October 24-25, 2014. Jackson claimed that the tickets were for Mr. Depp, Mr. Depp's girlfriend, Mr. Depp's mother, and Mr. Depp's manager.

49.     On or about Friday, October 24, 2014, Jackson sent a text message to an OWN executive stating that he wanted OWN to deliver the tickets to a hotel in South Beach. Jackson (impersonating Mr. Depp's manager) stated that his security assistant – identified as Justin Jackson – would retrieve the tickets. The OWN executive requested "Johnny Depp's manager" to provide a photograph of Jackson to ensure that OWN would be delivering the tickets to the proper person. Jackson provided a photograph. The photograph was of Defendant Jackson, shown below:



50.     OWN appeared with the tickets, but before they could be delivered, Jackson left the hotel and Agarrat appeared asking for the tickets.

**K.     Defendants' Scam to Obtain Employment for Jackson with Starwood Hotels.**

51.     In or about December of 2014, Jackson contacted Starwood Hotels via telephone and claimed to be Love, who he identified as Ms. Winfrey's executive assistant.  Jackson stated that he was calling to give a recommendation for Ms. Winfrey's nephew, Justin Jackson, who was seeking employment with the hotel.  Jackson then sent a resume and cover letter for Jackson to Starwood Hotels.  On information and belief, the resume and/or letter incorporated OWN's name and the OWN® trademarks.

52.     Neither Love nor OWN consented to the use of their names in connection with a recommendation of Jackson for employment with Starwood Hotels.  Love and OWN have been harmed by Jackson's misappropriation of their names in Jackson's communications with Starwood Hotels.  OWN has further been harmed by Jackson's infringement and dilution of the OWN® trademarks.

-14-

L.     **Jackson's Scheme to Obtain Access to Trey Songz.**

53.     In or about February of 2015, Jackson sent an email to Kevin Liles ("Liles"), a former Executive Vice President of Warner Music Group and former President of Def Jam Recordings.  In Jackson's email, Jackson purported to be Love writing on behalf of Ms. Winfrey and included a signature block suggesting that Love was the author of the email and the "Executive Assistant & Personal Aide" to Ms. Winfrey.  The email also made reference to the "Oprah Winfrey Network."  In the email, Jackson requested a "contact to management of Trey Songz."  Trey Songz is an American singer-songwriter, record producer, actor, and rapper.  Liles forwarded the email to Gayle King, a friend and business associate of Ms. Winfrey.

54.     Neither OWN nor Love consented to the use of their names in the email.  In sending this communication, Jackson misappropriated OWN's and Love's names for the financial benefit of Jackson.  Jackson intended to deceive and mislead a member of the public in attempting to encroach upon the business of OWN.  OWN and Love have been harmed by Jackson's misappropriation of their names.

## CAUSES OF ACTION

### COUNT I
**Common Law Invasion of Privacy – Misappropriation of Name under Florida Law (By Love, Garner, and OWN against Jackson and Agarrat).**

55.     Plaintiffs repeat and incorporate herein by reference the allegations in paragraphs 1 through 54 above.

56.     Defendants misappropriated Love's, Garner's, and OWN's names and did so without their consent.  In doing so, Defendants exploited Love's, Garner's, and OWN's names for a commercial purpose – namely, to obtain employment for themselves and to obtain gifts.

57.     Love, Garner, and OWN have suffered and continue to suffer irreparable harm as a result of Defendants' misappropriation of their names.

58.     Plaintiffs are entitled to injunctive relief under general principles of equity.

59.     As will be discussed in more detail in the Motion for Preliminary Injunction to be filed, Plaintiffs have established a substantial likelihood of success on the merits.

60.     Additionally, Plaintiffs do not have an adequate remedy at law and will suffer imminent, irreparable harm in the absence of an injunction because they cannot be adequately compensated in damages and Defendants have repeatedly shown that they will misappropriate Plaintiffs' names unless they are enjoined.  The misappropriation of Plaintiffs' names harms their reputations.

61.     The harm suffered by Plaintiffs in the absence of an injunction far exceeds any harm suffered by Defendants if an injunction is issued.  Indeed, Defendants would suffer *no* harm if they were merely enjoined from misappropriating Plaintiffs' names.

62.     Finally, an injunction would not disserve the public interest.  If anything, such an injunction would serve the public interest because the public deserves not to be led astray by Defendants' unauthorized use of Plaintiffs' names.

63.     Plaintiffs are willing to post bond.

WHEREFORE, Plaintiffs Reggie Love, Scott Garner, and OWN LLC request the entry of a preliminary injunction and a judgment permanently enjoining Defendants Justin Jackson and Angel Agarrat from any further unauthorized use of Plaintiffs' names, and awarding Plaintiffs any such other and further relief that the Court deems just and proper.

12351132v.11

## COUNT II
### Misappropriation of Name under Fla. Stat. § 540.08 (By Love against Jackson and Agarrat).

64.     Plaintiffs repeat and incorporate herein by reference the allegations in paragraphs 1 through 54 above.

65.     Through their forged letters of recommendation, false resumes, and forged emails, Defendants published, printed, displayed or otherwise publicly used Love's name to members of the public for purposes of trade or for commercial or advertising purpose of directly promoting products or services – namely, the services of Defendants as employees.   Defendants' publication, print, display, or public use of Love's name was done without the express written or oral consent of Love.  No person, firm, or corporation authorized in writing by Love to license the commercial use of his name consented to Defendants' publication, print, display, or public use of Love's name.

66.     Love has suffered and continues to suffer irreparable harm and damage as a result of Defendants' misappropriation of his name.

67.     Pursuant to Fla. Stat. § 540.08(2), Love is entitled to an injunction prohibiting further such acts.

68.     As will be discussed in more detail in the Motion for Preliminary Injunction to be filed, Love has established a substantial likelihood of success on the merits.

69.     Additionally, Love does not have an adequate remedy at law and will suffer imminent, irreparable harm in the absence of an injunction because he cannot be adequately compensated in damages and Defendants have repeatedly shown that they will misappropriate Love's name unless they are enjoined.   The misappropriation of Love's name harms his reputation.

-17-

70.     The harm suffered by Love in the absence of an injunction far exceeds any harm suffered by Defendants if an injunction is issued.  Indeed, Defendants would suffer *no* harm if they were merely enjoined from misappropriating Love's name.

71.     Finally, an injunction would not disserve the public interest.  If anything, such an injunction would serve the public interest because the public deserves not to be led astray by Defendants' unauthorized use of Love's name.

72.     Love is willing to post bond.

WHEREFORE, Plaintiff Reggie Love requests the entry of a preliminary injunction and a judgment permanently enjoining Defendants Justin Jackson and Angel Agarrat from any further unauthorized use of Reggie Love's name, and awarding Reggie Love any such other and further relief that the Court deems just and proper.

## <u>COUNT III</u>
### Trademark Infringement under 15 U.S.C. § 1114 (By OWN against Jackson and Agarrat).

73.     Plaintiffs repeat and incorporate herein by reference the allegations in paragraphs 1 through 54 above.

74.     OWN is the registered owner of the OWN® trademarks.  Defendants have knowingly used, and are continuing to use, in commerce, a reproduction, counterfeit, copy, or colorable imitation of the OWN® trademarks without OWN's consent in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.  Defendants are using the OWN® marks in connection with the advertising of Jackson's and Agarrat's services, and Defendants' use is likely to cause confusion, mistake, or to deceive in violation of 15 U.S.C. § 1114.

-18-

12351132v.11

75.     Alternatively, Defendants have knowingly, and without the consent of OWN, reproduced, counterfeited, copied, or colorably imitated the OWN® marks and applied such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. Defendants' acts were committed with intent that those acts cause confusion, mistake, or deception.

76.     OWN has suffered irreparable harm as a result of Defendants' trademark infringement.

77.     OWN is entitled to injunctive under 15 U.S.C. §§ 1116.

78.     As will be discussed in more detail in the Motion for Preliminary Injunction to be filed, OWN has established a substantial likelihood of success on the merits.

79.     Additionally, OWN does not have an adequate remedy at law and will suffer imminent, irreparable harm in the absence of an injunction because OWN cannot be adequately compensated in damages and Defendants have repeatedly shown that they will infringe OWN's trademarks and trade name unless they are enjoined.  The infringement of OWN's trademarks and trade name causes confusion, harms the OWN® marks, and places OWN's marks outside its control.

80.     The harm suffered by OWN in the absence of an injunction far exceeds any harm suffered by Defendants if an injunction is issued.  Indeed, Defendants would suffer *no* harm if they were merely enjoined from infringing OWN's trademarks and trade name.

81.     Finally, an injunction would not disserve the public interest.  If anything, such an injunction would serve the public interest because the public deserves not to be led astray by Defendants' unauthorized use of OWN's trademarks and trade name.

82.     OWN is willing to post bond.

WHEREFORE, Plaintiff OWN LLC requests the entry of a preliminary injunction and a judgment permanently enjoining Defendants Justin Jackson and Angel Agarrat from any further unauthorized use of OWN LLC's trademarks and trade name in a way that may cause confusion, mistake or deception of the public, and awarding OWN LLC any such other and further relief that the Court deems just and proper.

## COUNT IV
### Trademark Dilution under 15 U.S.C. § 1125(c) (By OWN against Jackson and Agarrat).

83.     Plaintiffs repeat and incorporate herein by reference the allegations in paragraphs 1 through 54 above.

84.     As set forth herein, the OWN® trademarks are famous trademarks in the United States, and they were famous prior to the commission of Defendants' unlawful activities relating to the OWN® marks alleged herein.  Defendants' unlawful activities have diluted the OWN® trademarks by tarnishing the marks, and have diluted the marks by impairing their distinctiveness.  As a result of Defendants' unlawful activities, at least some consumers now associate the OWN® trademarks with Defendants' scams, which have harmed the reputation of the OWN® trademarks.  This new association has had deleterious effects upon the trademarks, goodwill, and business reputation of OWN.  Accordingly, Defendants' use has blurred and tarnished the famous OWN® trademarks, which constitutes trademark dilution in violation of 15 U.S.C. § 1125(c).

12351132v.11

85.     In committing their unlawful activities, Defendants willfully intended to harm the reputation of the OWN® trademarks.  Further, Defendants willfully intended to trade on the recognition of the OWN® trademarks.

86.     OWN is entitled to an injunction under 15 U.S.C. §§ 1116, 1125(c)(1).

87.     As will be discussed in more detail in the Motion for Preliminary Injunction to be filed, OWN has established a substantial likelihood of success on the merits.

88.     Additionally, OWN does not have an adequate remedy at law and will suffer imminent, irreparable harm in the absence of an injunction because OWN cannot be adequately compensated in damages and Defendants have repeatedly shown that they will dilute OWN's trademarks and trade name unless they are enjoined.  The dilution of OWN's trademarks and trade name causes confusion, harms the OWN® marks, and places OWN's marks outside its control.

89.     The harm suffered by OWN in the absence of an injunction far exceeds any harm suffered by Defendants if an injunction is issued.  Indeed, Defendants would suffer *no* harm if they were merely enjoined from diluting OWN's trademarks and trade name.

90.     Finally, an injunction would not disserve the public interest.  If anything, such an injunction would serve the public interest because the public deserves not to be led astray by Defendants' unauthorized use of OWN's trademarks and trade name.

91.     OWN is willing to post bond.

WHEREFORE, Plaintiff OWN LLC requests the entry of a preliminary injunction and a judgment permanently enjoining Defendants Justin Jackson and Angel Agarrat from any further unauthorized use of OWN LLC's trademarks and trade name in a way that may cause confusion,

12351132v.11

mistake or deception of the public, and awarding OWN LLC any such other and further relief that the Court deems just and proper.

## COUNT V
### Civil Conspiracy.

92.    Plaintiffs repeat and incorporate herein by reference the allegations in paragraphs 1 through 54 above.

93.    Defendants are parties to a civil conspiracy.

94.    Defendants conspired to do unlawful acts – namely, misappropriate the names of Love, Garner, and OWN, and infringe and dilute the OWN® marks.

95.    Defendants committed overt acts in furtherance of their conspiracy, including those alleged against the respective Defendants in paragraphs 17-18, 20-22, 24, 26-33, 35-36, 38-40, 42-45, 48-51, and 53.

96.    Love, Garner, and OWN have suffered and continue to suffer irreparable harm as a result of Defendants' civil conspiracy.

97.    As a result of the civil conspiracy, Angel Agarrat is liable and responsible to the same extent as Justin Jackson for all acts committed in furtherance of the conspiracy.

98.    Plaintiffs are entitled to injunctive relief under general principles of equity.

99.    As will be discussed in more detail in the Motion for Preliminary Injunction to be filed, Plaintiffs have established a substantial likelihood of success on the merits.

100.    Additionally, Plaintiffs do not have an adequate remedy at law and will suffer imminent, irreparable harm in the absence of an injunction because they cannot be adequately compensated in damages and Defendants have repeatedly shown that they will conspire together to misappropriate Plaintiffs' names and infringe and dilute the OWN® marks unless they are

12351132v.11

enjoined.  Defendants' conspiracy and their overt acts in furtherance of the conspiracy harms Plaintiffs' reputations and harms the OWN® marks.

101.    The harm suffered by Plaintiffs in the absence of an injunction far exceeds any harm suffered by Defendants if an injunction is issued.  Indeed, Defendants would suffer *no* harm if they were merely enjoined from conspiring together to commit the unlawful acts of misappropriation and trademark infringement and dilution.

102.    Finally, an injunction would not disserve the public interest.  If anything, such an injunction would serve the public interest because the public deserves not to be led astray by Defendants' unauthorized use of Plaintiffs' names and OWN's trademarks and trade name.

103.    Plaintiffs are willing to post bond.

WHEREFORE, as a result of Defendants' civil conspiracy, Angel Agarrat is liable and responsible to the same extent as Justin Jackson.  Further, Plaintiffs Reggie Love, Scott Garner, and OWN LLC request the entry of a preliminary injunction and a judgment permanently enjoining Defendants Justin Jackson and Angel Agarrat from any further conspiracy to engage in the unauthorized use of Plaintiffs' names, and the unauthorized use of OWN LLC's trademarks and trade name in a way that may cause confusion, mistake or deception of the public, and awarding Plaintiffs any such other and further relief that the Court deems just and proper.

## COUNT VI
### Declaratory Relief.

104.    Plaintiffs repeat and incorporate herein by reference the allegations in paragraphs 1 through 54 above.

105.    An actual controversy exists between the parties involving the rights of Plaintiffs to determine how and when their names are used and to prevent harm to their reputations through unauthorized use of their names.

12351132v.11

106.    An actual controversy also exists between the parties regarding whether Defendants have unlawfully infringed or diluted OWN's trademarks and trade name.   The foregoing dispute presents a real controversy, which is now ripe for adjudication.

WHEREFORE, Plaintiffs Plaintiffs Reggie Love, Scott Garner, and OWN LLC seek a declaratory judgment against Defendants Justin Jackson and Angel Agarrat as follows:

      (a)    a declaration that Defendants have unlawfully misappropriated Plaintiffs' names;

      (b)    a declaration that Defendants have unlawfully infringed OWN's trademarks in violation of 15 U.S.C. § 1114;

      (c)    a declaration that Defendants have unlawfully diluted OWN's trademarks in violation of 15 U.S.C. § 1125(c);

      (d)    a declaration that Defendants have unlawfully infringed OWN's trade name; and

      (e)    awarding Plaintiffs any such other and further relief that the Court deems just and proper.

Respectfully submitted,

By: _/s/ Jorge D. Guttman_
    William K. Hill, Esq.
    Florida Bar No. 747180
    Email: whill@gunster.com
    Jorge D. Guttman, Esq.
    Florida Bar No. 15319
    Email: jguttman@gunster.com
    Gunster Law Firm
    Brickell World Plaza
    600 Brickell Ave., Suite 3500
    Miami, Florida 33131
    Telephone: (305) 376-6092
    Facsimile: (305) 376-6010

**ATTORNEYS FOR PLAINTIFFS**

**OF COUNSEL:**

Charles L. Babcock
(*Application for Pro Hac Vice to be Filed*)
Texas Bar No. 01479500
Email: cbabcock@jw.com
Nancy W. Hamilton
(*Application for Pro Hac Vice to be Filed*)
Texas Bar No. 11587925
Email: nhamilton@jw.com
John K. Edwards
Florida Bar No. 75335
Email: jedwards@jw.com
William J. Stowe
(*Application for Pro Hac Vice to be Filed*)
Texas Bar No. 24075124
Email: wstowe@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas  77010
Telephone:  (713) 752-4200
Facsimile:  (713) 752-4221

12351132v.11